[No. 6478.  Decided March 30, 1907.]

JACOB WEINHARD et al., *Respondents*. v. J. H. SUMMERVILLE,
*Appellant*.[1]

REFORMATION OF INSTRUMENTS—FRAUD—EVIDENCE—SUFFICIENCY.
The evidence is insufficient to warrant the reformation of a war-
ranty deed, so as to except a lease from the covenant of warranty,
where it appears that the vendors, upon accepting part payment, gave
a receipt calling for a warranty deed and abstract showing clear title
and executed the deed containing no reference to the lease, that no
representations were made to them as to the contents of the receipt
or deed, which they read or had opportunity to read, and that there
was no conversation or agreement as to the sale being made subject
to the lease; and the fact that the vendee directed the agent to omit
any reference to the lease in drawing the deed does not establish
fraud.

Appeal from a judgment of the superior court for Colum-
bia county, Miller, J., entered June 26, 1906, decreeing the
reformation of a warranty deed.  Reversed.

*Gose & Kuykendall*, for appellant.
*Will H. Fouts*, for respondents.

ROOT, J.—This was an action to reform a deed conveying
certain real estate from respondents to appellant.  From a
judgment and decree directing such reformation, this appeal
is taken.

The facts, as testified to by respondents' witnesses, were
about these:  One Cahill, a real estate agent, ascertained that
appellant had about $20,000 which he was desirous of in-
vesting in lands.  Cahill also ascertained that respondents
were desirous of selling their farm.  He interviewed them and
was told that they would sell for $50 per acre, and would
allow him a commission of $50.  He asked them if there was
any lease upon the place, and they told him that there was
a lease which ran for something like a year and a half there-

[1]Reported in 89 Pac. 490.

after.   Cahill reported all of these facts to the appellant, who went out and examined the farm and subsequently agreed to purchase it at the price mentioned.   He thereupon gave Cahill $1,000 which the latter paid over to respondents, receiving from them the following receipt:

"Dayton, Wash., April 28th, 1905.

"Received of W. E. Cahill check for one thousand dollars as part payment for my Royse ranch of 360 acres.   The balance to be paid on the delivery of a warranty deed for said lands and an abstract of title brought up to date showing title clear, which I promise and agree shall be delivered within three days from this date or on or before Monday, the 30th day of April, 1905, said warranty deed to run to such party or parties as W. E. Cahill shall designate, said lands described as follows to wit:   The south half of section ten and the southeast quarter of the southeast quarter of section nine, in township ten, north of range thirty-nine, East Willamette Meridian.   Said abstract of title when completed to date to be delivered to W. E. Cahill for examination before final payment of balance of said purchase price which is $17,000.   Jacob Weinhard."

A few days thereafter Cahill, at the request of the appellant, drafted a warranty deed and took it to respondents who executed the same and placed it in escrow in the bank to be delivered upon full payment of the purchase price.   Appellant told Cahill to say nothing about the lease in the deed and no mention thereof was made therein, the latter containing a warranty of the title absolute.   The respondent Weinhard read the receipt before signing the same.   He also read, or had an opportunity to read, the deed before signing the same.   When Cahill handed respondent Weinhard the deed, the latter asked if it was all right, and Cahill replied that it was.   As a matter of fact respondents had given a lease upon the farm and the lessee had sublet to another party who was then in possession of the land and was doing, and had already done, a large amount of summer fallowing, which was of considerable value.   After appellant paid the balance of the purchase price (the total amount being

$18,000) he demanded to be put in possession of the premises. Cahill endeavored to make some arrangement with the tenant by which the latter should surrender the possession. These negotiations failing, the appellant became insistent that respondents should place him in possession of the property under the terms of his deed. At length this action was commenced by respondents filing a complaint wherein they alleged that appellant and Cahill had conspired to cheat and defraud them by getting their signatures to an absolute warranty deed, instead of one making an exception of the lease referred to. It appears from the evidence that Cahill, at his own expense, employed the attorneys who brought the suit for respondents. Some of the foregoing facts are disputed by appellant's evidence, but the material part of them is undoubtedly supported by a preponderance of the evidence.

Appellant contends that there is no evidence establishing any fraud or mistake which would justify the reformation of the deed in question. Respondents claim that they did not intend to give a deed which should not except the lease; that Cahill was acting in the dual capacity of agent for them and agent for appellant, they not knowing of his being appellant's agent; that they relied and depended upon him to attend to the transaction and to prepare the proper form of deed, and did not know that the exception was omitted from the deed until after they had signed it.

Appellant urges that, inasmuch as no misrepresentations were made to the respondents as to what the deed contained, and as respondents read, or had every opportunity to read, the receipt, which called for an absolute warranty deed and an abstract showing perfect title, and had likewise full opportunity to read the deed itself, that there are no facts established which would justify a court in setting aside or reforming this deed. We think this contention must be upheld. The very purpose of written instruments is to put the agreement of the parties in a definite and permanent form,

which will prevent those difficulties which arise from the imperfections of human memory, or other human weaknesses more reprehensible. When parties form their agreement into a written instrument, it is to be presumed, in the absence of a clear showing to the contrary, that they have done so deliberately, and that such instrument correctly evidences their contract. They may be set aside or reformed only upon the establishment of facts showing fraud or mistake. In this case there was a lease upon the premises. The purchaser knew of this and desired to get a deed that should not make mention of that lease. The vendors had a right to make such a deed. They did make such a deed. Only one of them, Mr. Weinhard, gave testimony upon the trial. He did not testify that he did not know the contents of the receipt and of the deed when he signed them, nor that he intended or offered to sell subject to the lease. Neither did he testify that Cahill or anybody else made any representations to him as to what were the contents of the receipt or of the deed. Neither of the respondents is shown to have requested that the deed should except the lease or make any mention thereof, and there is no evidence whatever of any agreement or of any conversation to the effect that the deal was to be for the land subject to the lease. The mere fact that appellant wanted all mention of the lease omitted from the deed could not constitute fraud, in the absence of some word or act deceiving or intending to deceive respondents in regard to the contents of the deed. The receipt for the $1,000 expressly recited that a warranty deed was to be given, and that an abstract of title "showing title clear" was to be furnished. Considering all of the evidence in the case, there is nothing showing or tending to show that appellant, or Cahill as his agent, did or said anything calculated to deceive respondents as to the contents either of the receipt or of the deed. If it was the intention of respondents to sell the land subject to the lease, there is no evidence in this record that they ever expressed that intention to appellant or to Cahill, or anybody else represent-

ing appellant, and neither is there any evidence that appellant ever agreed to buy the land subject to the lease. If respondents had such an intention and through carelessness failed to express the same to appellant or his agent, and failed to have that intention evidenced in either the receipt or the deed, it would seem clear that an omission of this character could not constitute, under such circumstances as we find here, the basis for a decree reforming the deed. We are unable to find evidence sustaining the decree appealed from. The same is therefore reversed, and the cause remanded with instructions to dismiss the action.

HADLEY, C. J., FULLERTON, MOUNT, CROW, DUNBAR, and RUDKIN, JJ., concur.